# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

**NIGHT BOX FILED**

MAR 08 2002

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

**02-20758**

**CIV-MORENO**

**MAGISTRATE JUDGE DUBÉ**

|  |  |
|---|---|
| WILLIAM M. KLEIN BY STEPHEN S. KLEIN under power of attorney, on behalf of himself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| JAMES L. BROADHEAD, PAUL J. EVANSON, LEWIS HAY, III, DENNIS P. COYLE, THOMAS F. PLUNKETT, B.F. DOLAN, H. JESSE ARNELLE, SHERRY S. BARRAT, ROBERT M. BEALL, II,J. HYATT BROWN, MARSHALL M. CRISER, ARMANDO M. CORDINO, WILLARD D. DOVER, ALEXANDER W. DREYFOOS, JR., DREW LEWIS, FREDERIC V. MALEK and PAUL R. TREGURTHA, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants, | ) ) ) |
| and | ) ) ) |
| FPL GROUP, INC., | ) ) ) |
| Nominal Defendant. | ) ) ) |

## PLAINTIFF'S VERIFIED DERIVATIVE COMPLAINT

Plaintiff alleges the following upon information and belief, except as to matters concerning himself, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia,* the investigation conducted by plaintiff's counsel.

## NATURE OF THE ACTION

1.      Plaintiff brings this shareholder derivative action in the name and for the benefit of FPL Group, Inc. ("FPL Group") and under Rule 23.1, Fed. R.Civ. P.  As described below, defendants include FPL Group's Board of Directors (the "Board").  FPL Group is a nominal defendant.

2.      In July of 2000, FPL Group and Entergy Corporation ("Entergy") announced a proposed merger.  The merger was approved by the shareholders of the respective companies in December 2000.

3.      The FPL Group and Entergy merger, however, was abandoned and the parties terminated the merger agreement on April 1, 2001.

4.      Despite the failed merger, certain executives of FPL Group, Florida Power & Light Company ("FPL"), and FPL Energy, L.L.C. ("FPL Energy") received millions of dollars in compensation tied to the failed merger.  James Broadhead, Chairman and CEO of both FPL Group and FPL, received $22,686,674, and four other FPL Group and subsidiary executives received payments totaling $29,344,498 among themselves.

5.      Two of the five defendants (Broadhead and Plunkett) who received these payments rapidly left the company and are no longer affiliated with FPL Group or its subsidiaries.

6.      FPL Group, with the Board's knowledge and approval, recklessly released million of dollars in "compensation" to these executives of FPL Group, FPL, and FPL Energy under a "change in control" provision set forth in two long-term incentive plans described in further detail below.  Although FPL Group shareholders voted in favor of the merger with Entergy, the merger was called off; no transaction was ever consummated and no new company resulted from the proposed merger.  Nevertheless, the Board approved approximately $52 million in payments and accelerated benefits

to defendants Broadhead, Evanson, Hay, Coyle and Plunkett on the theory that the abandoned Entergy merger constituted a "change in control" under certain long-term incentive plans that triggered these exorbitant and wasteful payments.  The plain language of these incentive plans, however, dictated that because no new corporation resulted from the proposed (but abandoned) merger, no "change of control" ever occurred that would trigger FPL Group's obligation to pay or accelerate the payment of such lavish sums.  Indeed, the change of control provision states that the payments are triggered only if: "the Corporation's shareholders approve a merger, sale of assets or other similar transaction with respect to which the Corporation's shareholders immediately before the transaction do not own at least 75% of the voting securities *of the corporation resulting from the transaction*."

7.      Although the Board knew or had reason to know that such wrongdoing had occurred, it failed to correct it or prevent its continuation.  Given the language of the change of control provision, no payments should have been made to the corporate executives because no corporation resulted from the transaction.

8.      As a result of defendants' conduct, the business community's perception of FPL Group has been, and will continue to be, substantially impaired.  Further, the Company will suffer from "liar's discount" because of its tainted image.[1]

9.      Plaintiff made a written demand upon the Board of Directors on January 17, 2002 to bring this action.  (See Demand Letter, annexed hereto as Exhibit "A").  The Demand Letter urged

---

[1] The term "liar's discount" is commonly applied to stocks of companies that have been implicated in illegal behavior and that have misled securities analysts and the investing public.

FPL Group's Board to take the "appropriate steps to provide for equitable and therapeutic relief, as well as retroactive damages, in connection with the actions described" in the letter.

10.     On February 5, 2002, the Board acknowledged receipt of the Demand Letter. (A copy of the Board's letter is annexed hereto as Exhibit B). The letter stated that the Board has "created a Demand Evaluation Committee" which will conduct an "analysis and recommendation" of the claims in the Demand Letter. The letter also stated that "[t]he Board will respond substantively to your demand once it has received and considered the Report of the Committee." To date, the Board has not provided any other response to plaintiff's Demand Letter and has not informed plaintiff of any other activities it has undertaken with respect to the Demand letter.

11.     The FPL Group Board, however, has publicly stated that it has no intention of seeking the return of these executive payments. On January 17, 2002, FPL spokeswoman Mary Lou Kromer was quoted in the *Miami Herald*, saying: "The document shareholders received [a Proxy Statement] related to the details of the proposed merger clearly stated that if the deal was approved, certain awards under the incentive plan would be deemed fully earned and vested and would be paid out. There were no further conditions to the payments."

## THE PARTIES

12.     Plaintiff was a shareholder of FPL Group at the time the misconduct alleged herein occurred and continues to hold his FPL Group stock. Plaintiff is a citizen of New Jersey.

13.     Defendant FPL Group is incorporated under the laws of Florida and maintains its executive offices in Juno Beach, Florida. As of October 31, 2001, FPL Group had approximately 175,868,896 shares of commons stock outstanding. FPL Group is publicly traded on the New York Stock Exchange.

14.     The following defendants served as directors and/or senior executive officers of FPL Group or its subsidiaries ("Individual Defendants") as of the commencement of this action and during all times material hereto.

15.     Defendant James L. Broadhead was a Director of FPL Group since 1990 until December 31, 2001, and also served as Chairman of the Board and Chief Executive Officer of FPL Group until December 31, 2001, and is a citizen of the State of Florida.

16.     Defendant Paul J. Evanson has been a Director of FPL Group since 1995, and is a citizen of the State of Florida.

17.     Defendant Lewis Hay, III has been a Director of FPL Group since 2001, and is currently serving as Chairman, President and Chief Executive Officer of FPL Group, and is a citizen of the State of Florida.

18.     Defendant Dennis P. Coyle has been General Counsel and Secretary of FPL Group since 1991, and is a citizen of the State of Florida.

19.     Defendant Thomas F. Plunkett was President of the Nuclear Division of FPL at all relevant times, and is a citizen of the State of Florida.

20.     Defendant B.F. Dolan was a Director of FPL Group since 1992, and is a citizen of the State of North Carolina.

21.     Defendant H. Jesse Arnelle has been a Director of FPL Group since 1990, and is a citizen of the State of California.

22.     Defendant Sherry S. Barrat has been a Director of FPL Group since 1998, and is a citizen of the State of California.

23. Defendant Robert M. Beall, II has been a Director of FPL Group since 1989, and is a citizen of the State of Florida.

24. Defendant J. Hyatt Brown has been a Director of FPL Group since 1989, and is a citizen of the State of Florida.

25. Defendant Marshall M. Criser has been a Director of FPL Group since 1989, and is a citizen of the State of Florida.

26. Defendant Armando M. Cordino has been a Director of FPL Group since 1994, and is a citizen of the State of Florida.

27. Defendant Willard D. Dover has been a Director of FPL Group since 1989, and is a citizen of the State of Florida.

28. Defendant Alexander W. Dreyfoos, Jr. has been a Director of FPL Group since 1997, and is a citizen of the State of Florida.

29. Defendant Drew Lewis has been a Director of FPL Group since 1992, and is a citizen of the State of Pennsylvania.

30. Defendant Frederic V. Malek has been a Director of FPL Group since 1987, and is a citizen of the State of Virginia.

31. Defendant Paul R. Tregurtha has been a Director of FPL Group since 1989, and is a citizen of the State of Connecticut.

32. Each of the Individual Defendants, because of his or her position as a director and/or senior officer of FPL Group, owed and continues to owe fiduciary duties to the nominal corporate defendant and its present and former shareholders in connection with the operations, management and

direction of FPL Group. Unless otherwise specifically indicated herein, the phrase "defendants" does not include FPL Group.

33.     To discharge these duties, defendants were required, among other things:

        a.      to ensure that the business and affairs of FPL Group were conducted in accordance with state and federal laws, rules and regulations and the charters and by-laws of the companies;

        b.      to ensure the prudence and soundness of FPL Group management's policies and practices; and

        c.      to remain informed as to how FPL Group was in fact operating and, upon receiving notice or information of imprudent or unsound practices, to make an appropriate, thorough investigation in connection therewith and to take steps to correct the condition or practice. The defendants failed to discharge these duties at all relevant times hereto.

34.     Each defendant herein is sued individually as a conspirator or aider and abettor as well as, in their individual capacity as directors and/or officers of FPL Group. The liability of each arises from the fact that they have caused or engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein and were necessary and indispensable to the consummation of the wrongs complained of herein.

## JURISDICTION AND VENUE

35.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff, on the one hand, and defendants, on the other, are citizens of different states. The amount in controversy exceeds $75,000 exclusive of interests and costs. This action is not a collusive one to confer jurisdiction on a court of the Unites States that it would not otherwise have.

-7-

36.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Many of the acts, transactions, and occurrences constituting violations of law complained of herein occurred in this District and FPL Group's principal place of business is located in this District.

## SUBSTANTIVE ALLEGATIONS

37.    FPL Group is a public utility holding company.  FPL Group's principal subsidiary, Florida Power & Light Company, is engaged in the generation, transmission, distribution and sale of electric energy.

38.    FPL Group Capital, Inc., a wholly owned subsidiary of FPL Group, holds the capital stock and provides funding for the operating subsidiaries other than FPL.  The business activities of these operating subsidiaries primarily consist of FPL Energy's independent power projects.  FPL Energy, LLC, FPL Group's energy generating subsidiary, produces electricity from various fuels. FPL Energy has power plants in operation in 12 states.

39.    In 1994, FPL Group asked the shareholders to approve what was termed the Long Term Incentive Plan 1994 ("1994 Plan"). The proposed 1994 Plan was to replace FPL Group's Long Term Incentive Plan originally adopted in 1985.

40.    A copy of the 1994 Plan was included as Exhibit A to FPL Group's March 22, 1994 DEF 14A Proxy, filed with the Securities and Exchange Commission.

41.    Section 9.01 of the 1994 Plan, entitled "Acceleration and Cash-Out Rights" provides:

In the event of a "Change of Control," as defined in Section 9.02, automatically in the case of Participants subject to Section 16 of the Exchange Act, and unless otherwise determined by the Board in writing at or after grant but prior to the occurrence of the Change of Control in the case of Participants not subject to Section 16 of the Exchange Act: (i) The performance criteria of all Performance Awards, Performance-Based Restricted Stock, and Other Stock-Based Awards shall be deemed fully achieved and all such Awards shall be fully earned and vested, subject only to the

-8-

restrictions on dispositions of equity securities set forth in Section 8.01.1 and legal restrictions on the issuance of Shares set forth in Section 8.04; (ii) <u>Any Option, Stock Appreciation Right, and other Award in the nature of a right that may be exercised which was not previously exercisable and vested shall become fully exercisable and vested</u>, subject only to the restrictions on dispositions of equity securities set forth in Section 8.01.1 and legal restrictions on the issuance of Shares set forth in Section 8.04; (iii) <u>The restrictions, deferral limitations, and forfeiture conditions applicable to any other Award granted under the Plan shall lapse and such Awards shall be deemed fully vested</u>, subject only to the restrictions on dispositions of equity securities set forth in Section 8.01.1 and legal restrictions on the issuance of Shares set forth in Section 8.04; and (iv) <u>All outstanding Awards shall be cancelled and a Participant holding any such Award shall be paid in cash</u> therefor on the basis of the "Change of Control Price" (as defined in Section 9.03) as of the date that the Change of Control occurs, or such other date as the Committee may determine prior to the Change of Control; provided, however, that this Section 9.01 (iv) shall not apply in the case of any Award if the cancellation of and payment for such Award would cause the Participant to incur actual short-swing profits liability under Section 16(b) of the Exchange Act.

42.    Section 9.03 of the 1994 Plan defines "Change of Control Price" as the highest price per share paid in any transaction reported on the securities exchange or trading system on which the Shares are then primarily listed or traded, or paid or offered in any transaction related to a Change of Control of the Corporation at any time during the preceding 60-day period as determined by the Committee, except that in the case of Incentive Stock Options and Stock Appreciation Rights relating thereto, such price shall be based only on transactions reported for the date on which the Committee decides to cash out such Awards.

43.    The 1994 Plan defined Change of Control in Section 9.02:

For purposes of Section 9.01, a "Change of Control" shall mean: *** (c) <u>Approval by the shareholders of the Corporation of a</u> reorganization, <u>merger</u> or consolidation, in each case, <u>with respect to which all or substantially all of the individuals and entities who were the beneficial owners</u>, respectively, <u>of the Outstanding Corporation Common Stock</u> and Outstanding Corporation Voting Securities <u>immediately prior to such</u> reorganization, <u>merger</u> or consolidation <u>do not, following such</u> reorganization, <u>merger</u> or consolidation, beneficially <u>own</u>, directly or indirectly, <u>more than 75% of</u>, respectively, <u>the then outstanding shares of common stock</u> and the combined voting

-9-

<u>power</u> of the then outstanding voting securities entitled to vote generally in the election of directors, as the case may be, <u>of the corporation resulting from such</u> reorganization, <u>merger</u> or consolidation <u>in substantially the same proportions as their ownership, immediately prior to such</u> reorganization, <u>merger</u> or consolidation of the Outstanding Corporation Common Stock and Outstanding Corporation Voting Corporation Securities, as the case may be.***

44.     The Annual Meeting of FPL Group's shareholders was held on May 9, 1994.  The 1994 Long Term Incentive Plan was approved by the shareholders.

45.     In 1996, shareholders Roger C. and Virginia L. Zwieg introduced a shareholder's proposal to amend the 1994 Plan.  *See* 03/25/96 DEF 14A Proxy.   The proposal asked the shareholders to modify the 1994 Plan "so that under future executive compensation arrangements the value of stock and or cash paid under this plan shall not exceed $200,000 to any one executive in any calendar or fiscal year."  The Board unanimously opposed this proposal, and told the shareholders that "a generally accepted principle of contemporary executive compensation practice is that a substantial portion of an executive officer's compensation should be dependent upon performance." In support of its formal position recommending that the shareholders vote against this proposal, the Board also stated that:

> One of the objectives of the Long Term Incentive Plan is to align the interests of executive officers with the interests of shareholders. This is accomplished not only by making payouts under the plan dependent upon long-term performance, but by making payouts (other than cash payments for income taxes) in the form of shares of FPL Group Common Stock which the officer is expected to retain throughout his or her employment by the Corporation. The Zwiegs' proposal would frustrate this objective by decreasing the amount of an officer's compensation and net worth that is dependent upon the long-term performance of the Corporation and the value of its Common Stock. Again, it is difficult to see how this would be advantageous to the Corporation's shareholders. To summarize, the Zwiegs' proposal is contrary to sound executive compensation principles and practices and opposed to the best interests of shareholders.

46.     The Annual Meeting of FPL Group's shareholders was held on May 13, 1996.  The Zweig's shareholder proposal failed.

47.     The FPL Group represented to shareholders that the Internal Revenue Code required re-approval of these types of plans every five years, the shareholders were asked to re-approve the 1994 Plan in 1999.  See 3/29/99 DEF 14A Proxy.  The FPL Group Board stated in relevant part:

> In the event of a "change of control" of the Corporation, automatically in the case of the Covered Officers, (i) all performance criteria of performance-based awards will be deemed fully achieved and all such awards shall be fully earned and vested and (ii) all outstanding awards will be cancelled and the holder will be paid in cash therefor on the basis of the "change of control price" as of the date that the change of control occurs or such other date as the Compensation Committee may determine prior to the change of control.

> A "change of control" is deemed to have occurred if: (i) any person, other than the Corporation, a subsidiary or employee benefit plan of the Corporation, or a corporation in a transaction resulting in more than 75% of its voting securities being owned by the Corporation's shareholders, is or becomes the beneficial owner of 20% or more of the voting power of the Corporation's outstanding voting securities; (ii) individuals who were members of the Board at the effective date of the Long Term Plan cease, for any reason to constitute at least a majority thereof, unless each director who was not a director at such date was elected by, or on the recommendation of, at least a majority of the directors who were serving at such date or who were subsequently so elected or appointed; (iii) the Corporation's shareholders approve a merger, sale of assets or other similar transaction with respect to which the Corporation's shareholders immediately before the transaction do not own at least 75% of the voting securities of the corporation resulting from the transaction; or (iv) the shareholders approve the liquidation or dissolution of the Corporation.  "Change of control price" means the highest price per share paid in the open market, or offered to be paid in a transaction related to the change of control, during the preceding 60-day period.

> THE BOARD OF DIRECTORS RECOMMENDS A VOTE "FOR" REAPPROVAL.
> [3/29/99 DEF 14A] (emphasis added)

48.     The Annual Meeting of FPL Group's shareholders was held on May 10, 1999, at which the shareholders re-approved portions of the 1994 Plan based on the Board's representations.

-11-

49.    On July 30, 2000, FPL Group, Entergy, WCB Holding Corp. ("WCB"), Ranger Acquisition Corp. ("Merger Sub A") and Ring Acquisition Corp. ("Merger Sub B") entered into an Agreement and Plan of Merger (the "Merger Agreement").

50.    A Special Meeting of FPL Group's shareholders was held on December 15, 2000 to approve the proposed merger between FPL Group and Entergy, which was approved by the shareholders of the respective corporations in December 2000.

51.    On April 1, 2001, however, the companies terminated the Merger Agreement between FPL Group and Entergy. FPL Group stated in its amended Form 10-K, dated April 9, 2001, that "a number of factors led FPL Group to conclude the merger would not achieve the synergies or create the shareholder value originally contemplated when the merger was announced."

52.    Despite the failure of the merger, the following executives of FPL Group and FPL Energy received millions of dollars of compensation which was tied to the merger and the "change in control," which was completely out of line with their prior compensation for 1999 and 1998:

| Name | Position | 2000 | 1999 | 1998 |
|------|----------|------|------|------|
| James L. Broadhead | Chairman and CEO of FPL Group and FPL | $22,686,674 | $1,148,751 | $2,004,180 |
| Paul J. Evanson | President of FPL | $10,395,654 | $458,985 | $704,304 |
| Lewis Hay, III | President of FPL Energy, LLC - | $6,696,320 | $65,400 | n/a (joined July 1999) |
| Dennis P. Coyle | General Counsel and Secretary of FPL Group and FPL | $6,349,587, | $251,095 | $412,413 |

| Thomas F. Plunkett | President, Nuclear Division of FPL | **$5,902,937** | $179,564 | $103,481 |
|---|---|---|---|---|
| GRAND TOTALS | | **$52,031,172** | $2,103,795 | $3,224,378 |

53.     These payments were improper and were not authorized by the 1994 Plan or by the shareholders of FPL Group.  FPL Group explained these payments as follows: "FPL Group Shareholders' December 15, 2000 approval of a proposed merger with Entergy Corporation resulted in a change of control under the definition in FPL Group's 1994 Long Term Incentive Plan."  (See 4/11/01 14A Proxy.)

54.     The payments referred to above were made by the FPL Group improperly and in breach of the Board's fiduciary duty because a "change in control" never occurred.  The 1994 and 1999 Plans require that a corporation result from the merger.  See ¶¶ 43, 47 above.  Because no such corporation resulted from the proposed merger between FPL and Entergy, the payments to these executives was improper, a corporate waste, and a breach of the Board's fiduciary duties to the Company and its shareholders.

55.     In April 2001, The FPL Group Compensation Committee, comprised of disinterested directors responsible for determining the payments to be made under the 1994 Plan, noted in FPL Group's April 11, 2001 DEF 14A that: "[t]he Board of Directors adopted, and in 1994 and 1999 shareholders approved, an Annual Incentive Plan and a Long Term Incentive Plan that are intended to prevent the loss of the federal income tax deductions available to the Corporation for the amount of any compensation paid thereunder to the chief executive officer and the four other most

highly-compensated officers." The Committee went on to note that despite this fundamental purpose,

the payments made to the five FPL executives named herein may not actually be deductible:

> In accordance with these plans, the Committee structured the 2000 executive compensation program to qualify for deduction all compensation paid thereunder to these officers, and it intends to do likewise with the executive compensation programs for 2001 and future years as long as doing so is compatible with what the Committee considers to be a sound compensation program. However, some of the payments to these officers under the Long Term Incentive Plan that resulted from the change of control of the Corporation that occurred as a result of the approval by the Corporation's shareholders of a proposed merger with Entergy Corporation may not be deductible by the Corporation for federal income tax purposes. The actual amount that may not be deductible is not determinable at this time.

56.     The non-deductibility of the improper payments to the FPL executives named herein

will further increase the cost of the payments.

## DERIVATIVE ALLEGATIONS

57.     Plaintiff brings this action derivatively in the right of and for the benefit of FPL Group

to redress injuries suffered and to be suffered by the nominal corporate defendant, as a direct result

of defendants' wrongdoing.

58.     Plaintiff will adequately and fairly represent the interests of the nominal corporate

defendant and its stockholders in enforcing and prosecuting their rights.

59.     Plaintiff caused a demand to be made to the current board of directors of FPL Group

on January 17, 2002 to redress injuries resulting from the misconduct alleged above. *See* Exhibit A.

60.     As of the date of the filing of this Complaint, FPL Group has issued no further

response other than to send plaintiffs a letter which is described in ¶10 above and annexed hereto as

Exhibit B. Plaintiff and other FPL Group shareholders are entitled to relief.

-14-

## FIRST CLAIM
### (Against The Individual Defendants
### For Breaches of Fiduciary Duty)

61.     Plaintiff repeats and realleges each and every paragraph above as though fully set forth below.

62.     This claim is brought derivatively by plaintiff on behalf of FPL Group against the Individual Defendants.

63.     The Individual Defendants were and/or are fiduciaries of FPL Group and owed the Company a duty to conduct its business loyally, faithfully, carefully, diligently and prudently.   These claims are asserted based on the Individual Defendants' acts in violation of state law and common law, which acts constitute gross and reckless breaches of fiduciary duties.

64.     The Individual Defendants, in their roles as executives and/or directors of FPL Group or its subsidiaries, participated in the acts of mismanagement and misrepresentation alleged herein, or acted in reckless disregard of the facts known to them, and failed to exercise due care.  The defendants became aware, or should have become aware through reasonable inquiry, of the facts alleged herein, but did nothing to correct them and thereby breached their fiduciary duties of care, loyalty, accountability and disclosure to the stockholders of FPL Group by failing to act as an ordinary prudent person would have acted in a like position.

65.     The Individual Defendants have been responsible for the gross mismanagement of FPL Group.  These defendants abdicated their corporate responsibilities, obligations and fiduciary duties by mismanaging FPL Group as alleged above.

66.     As a result of the Individual Defendants' wrongful conduct and actions, FPL Group has suffered considerable damage and drastic diminution in the value of its assets and stock.

-15-

67.     All the Individual Defendants, singly or in concert, engaged in the aforesaid conduct in grossly negligent and/or reckless disregard of their fiduciary duties to FPL Group.

68.     At all times relevant herein, the Individual Defendants occupied fiduciary positions with FPL Group that made them privy to confidential material inside information concerning FPL Group and its operations.

69.     By reason of the foregoing, the Individual Defendants have breached their fiduciary obligations to FPL Group and its stockholders.

70.     FPL Group and its stockholders have been injured by reason of the Individual Defendants' grossly negligent breach and/or reckless disregard of their fiduciary duties to the Company. The Individual Defendants engaged in the aforesaid conduct without exercising reasonable and ordinary care which they as directors and senior executive officers owed to FPL Group and, in bad faith, have wrongfully breached and/or aided and abetted breaches of fiduciary duties to FPL Group. Plaintiff, as a stockholder and derivative representative of FPL Group, seeks damages and other relief for the nominal corporate defendant.

## JURY DEMAND

71.     Plaintiff hereby demands a trial by jury.

**WHEREFORE**, plaintiff demands judgment and preliminary and permanent relief in plaintiff's favor and in favor of FPL Group, as appropriate, against all defendants as follows:

a.      Authorizing the maintenance of this action as a derivative action, with plaintiff as derivative plaintiff;

b.      Declaring that the Individual Defendants have violated their fiduciary duties to FPL Group;

-16-

      c.      Declaring that FPL Group is not required to pay any Individual Defendant any benefits pursuant to the terms of any employment, separation or consulting agreements;

      d.      Directing that FPL Group is entitled to contribution from the Individual Defendants;

      e.      Against each Individual Defendant for restitution and/or damages, including pre-judgment interest;

      f.      Against defendants Broadhead, Evanson, Hay, Coyle and Plunkett for recovery of all sums wrongfully paid to them under the 1994 and 1999 Long-Term Incentive Plan.

      g.      Requiring that FPL Group implement effective internal control mechanisms and corporate governance policies and procedures designed to adequately monitor FPL Group's compliance with federal and state laws;

      h.      Awarding plaintiff the costs and disbursements of this litigation, including reasonable allowances for plaintiff's attorney's fees and experts' fees and expenses; and

      i.      Granting such other further relief as may be just and proper under the circumstances.

Dated: March 7, 2002

**MILBERG WEISS BERSHAD
HYNES & LERACH LLP**

By: _____
Kenneth J. Vianale
Fla. Bar. No. 169668
E-mail: kjv@mwbhlny.com
Christopher S. Jones
Fla. Bar No. 306230
E-mail: cj@mwbhlny.com
5355 Town Center Road, Suite 900
Boca Raton, FL 33486
Tel: (561) 361-5000
Fax: (561) 367-8400


**CURTIS V. TRINKO, LLP**
Curtis V. Trinko
16 West 46th Street, 7th floor
New York, NY 10036
E-mail: ctrinko@trinko.com
Tel: (212) 490-9550
Fax: (212) 986-0158

**Attorneys for Plaintiff**

## VERIFICATION

I, William M. Klein, by Stephen S. Klein under power of attorney, declare that I have read the foregoing complaint and know the contents thereof, and that the same is true to my own knowledge, except as to matters herein stated to be alleged on information and belief and as to those matters I believe it to be true.

Dated: _3/4/02_

_____
WILLIAM M. KLEIN, by Stephen S. Klein under power of attorney

# EXHIBIT A

# Milberg Weiss Bershad Hynes & Lerach LLP

The Plaza, 5355 Town Center Road, Suite 900, Boca Raton, FL 33486
(561) 361-5000  Fax: (561) 367-8400

www.milberg.com

New York
San Diego
San Francisco
Los Angeles
Seattle

January 17, 2002

<u>VIA HAND DELIVERY</u>

Board of Directors
c/o Lewis Hay, III Chariman of the Board
FPL Group, Inc.
700 Universe Blvd.
Juno Beach, FL 33408

Dear Members of the Board:

  We have been retained as counsel by William M. Klein (by Stephen S. Klein under Power of Attorney), a shareholder of FPL Group, Inc. ("FPL Group" or the "Company"). Mr. Klein was a shareholder at the time the actions contained herein occurred and continues to hold his shares. Pursuant to Fla. Stat. §607.07401, this letter represents a demand that FPL Group's Board of Directors take the appropriate steps to provide for equitable and therapeutic relief, as well as retroactive damages, in connection with the actions described below.

  Our investigation has revealed that an act of gross mismanagement has been committed by certain of FPL Group's officers and directors which has injured FPL Group's shareholders. Specifically, FPL Group has improperly paid certain officers of FPL Group and its subsidiaries at least $52,031,172 as explained below.

<u>The FPL Group 1994 Long Term Incentive Plan</u>

  In 1994, FPL Group shareholders approved what was termed the 1994 Long Term Incentive Plan ("1994 Plan"). A copy of the 1994 Plan was included as Exhibit A to FPL Group's March 22, 1994 DEF 14A Proxy. Section 9.01 of the 1994 Plan, entitled "Acceleration and Cash-Out Rights" provides that "[i]n the event of a "Change of Control," as defined in Section 9.02..., (i) the performance criteria of all Performance Awards, Performance-Based Restricted Stock, and Other Stock-Based Awards shall be deemed fully achieved and all such Awards shall be fully earned and vested...."



MILBERG WEISS BERSHAD HYNES & LERACH LLP

Board of Directors
January 17, 2002
Page - 2 -

The Plan defined Change of Control in Section 9.02:

> For purposes of Section 9.01, a "Change of Control" shall mean: ***
> (c) Approval by the shareholders of the Corporation or a
> reorganization, merger or consolidation, in each case, with respect to
> which all or substantially all of the individuals and entities who were
> the beneficial owners, respectively, of the Outstanding Corporation
> Common Stock and Outstanding Corporation Voting Securities
> immediately prior to such reorganization, merger or consolidation do
> not, <u>following such reorganization, merger or consolidation,</u>
> beneficially own, directly or indirectly, more than 75% of,
> respectively, the then outstanding shares of common stock and the
> combined voting power of the then outstanding voting securities
> entitled to vote generally in the election of directors, as the case may
> be, <u>of the corporation resulting from such reorganization, merger or</u>
> <u>consolidation</u> in substantially the same proportions as their
> ownership, immediately prior to such reorganization, merger or
> consolidation of the Outstanding Corporation Common Stock and
> Outstanding Corporation Voting Corporation Securities, as the case
> may be.***

<u>The 1999 re-approval process</u>

Citing tax considerations, the Board asked the shareholders to re-approve the 1994
Plan in 1999.  *See* 03/29/99 DEF 14A Proxy.  The Board stated, in relevant part:

> In the event of a "change of control" of the Corporation,
> automatically in the case of the Covered Officers, (i) all performance
> criteria of performance-based awards will be deemed fully achieved
> and all such awards shall be fully earned and vested and (ii) all
> outstanding awards will be canceled and the holder will be paid in
> cash therefor on the basis of the "change of control price" as of the
> date that the change of control occurs or such other date as the
> Compensation Committee may determine prior to the change of
> control.

The Board also stated that "a 'change of control' is deemed to have occurred if... (iii)
the Corporation's shareholders approve a merger, sale of assets or other similar transaction with
respect to which the Corporation's shareholders immediately before the transaction do not own at
least 75% of the voting securities of <u>the corporation resulting from the transaction</u>...."

MILBERG WEISS BERSHAD HYNES & LERACH LLP

Board of Directors
January 17, 2002
Page - 3 -

The Annual Meeting of FPL Group's shareholders was held on May 10, 1999, at which time the
shareholders re-approved portions of the 1994 Plan based on the Board's representations.

The failed merger and the improper payments

        In July of 2000, FPL Group and Entergy Corporation ("Entergy") announced a
*proposed* merger, which was approved by the shareholders of the respective corporations in
December 2000. However, on April 1, 2001, the companies terminated the merger agreement.
Despite the failed merger, certain executives of FPL Group, FPL, and FPL Energy received millions
of dollars in compensation which were reportedly tied to the merger. James L. Broadhead, Chairman
and CEO of both FPL Group and FPL, received $22,686,674, and four other FPL Group and
subsidiary executives received $29,344,498 as described below:

| Name | Position | 2000 | 1999 | 1998 |
|---|---|---|---|---|
| James L. Broadhead | Chairman and CEO of FPL Group and FPL | $22,686,674 | $1,148,751 | $2,004,180 |
| Paul J. Evanson | President of FPL | $10,395,654 | $458,985 | $704,304 |
| Lewis Hay, III | President of FPL Energy, LLC - | $6,696,320 | $65,400 | n/a (joined July 1999) |
| Dennis P. Coyle | General Counsel and Secretary of FPL Group and FPL | $6,349,587, | $251,095 | $412,413 |
| Thomas F. Plunkett | President, Nuclear Division of FPL | $5,902,937 | $179,564 | $103,481 |
| GRAND TOTALS | | $52,031,172 | $2,103,795 | $3,224,378 |

FPL Group explained these payments in its April 11, 2001 14A Proxy: "FPL Group shareholders'
December 15, 2000 approval of a proposed merger with Entergy Corporation resulted in a change
of control under the definition in FPL Group's 1994 Long Term Incentive Plan."

MILBERG WEISS BERSHAD HYNES & LERACH LLP

Board of Directors
January 17, 2002
Page - 4 -

However, FPL Group improperly made these payments because a "change in control" never occurred. The 1994 and 1999 Plans require that a corporation result from the merger. Since no such corporation resulted from the proposed merger due to its cancellation, the payments were improper. The actions committed by the officers and directors in making these payments resulted in a direct breach of their fiduciary duties to the Company's shareholders. Mr. Klein demands that the Board of Directors immediately take all steps necessary to secure the recovery of the improper payments described herein.

Very truly yours,

Kenneth J. Vianale

KJV/jat

# Milberg Weiss Bershad Hynes & Lerach LLP

The Plaza, 5355 Town Center Road, Suite 900, Boca Raton, FL 33486
(561) 361-5000  Fax: (561) 367-8400

www.milberg.com

New York
San Diego
San Francisco
Los Angeles
Seattle

FPL GROUP, INC.

COPY OF LETTER DATED JANUARY 17, 2002 RECEIVED BY

*Richard J Kuhit*

- January 17, 2002 (10:02AM)



# EXHIBIT B

S T E E L ■

HECTOR

▣ D A V I S˜

Steel Hector & Davis LLP
200 South Biscayne Boulevard
Miami, Florida 33131-2398
305.577.7000
305.577.7001 Fax
www.steelhector.com

Alvin B. Davis, P.A.
305.577.2835
adavis@steelhector.com

February 5, 2002

**VIA TELECOPIER**

Kenneth J. Vianale, Esq.
Milberg Weiss Bershad
     Hynes & Lerach LLP
The Plaza - Suite 900
5355 Town Center Road
Boca Raton, Florida  33486

### In re:  Demand Letter of William M. Klein

Dear Mr. Vianale:

I have been asked to respond to your letter of January 17, 2002 to the Board of Directors of FPL Group, Inc. (the "Board") on behalf of William M. Klein.

In response to an earlier shareholder demand pertaining to the proposed merger between FPL Group and Entergy Corporation, the Board created a Demand Evaluation Committee (the "Committee") made up of three independent, outside Directors.  At the next meeting of the Board it will be requested to promptly refer the issues raised in your letter to the Committee for its analysis and recommendation.  It is our expectation that the Board will make the reference and that the Committee will undertake its analysis immediately.

The Board will respond substantively to your demand once it has received and considered the Report of the Committee.

You will be kept advised of the Committee's progress.

Very truly yours,

Alvin B. Davis, P.A.

ABD/ps

02-20758

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
William M. Klein by Stephen S. Klein under power of attorney, on behalf of himself and all others similarly situated,

## DEFENDANTS
James L. Broadhead, et al.

NIGHT BOX FILED

MAR 08 2002

CIV-MORENO

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Monmouth County, NJ
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT CLARENCE MADDOX
(IN U.S. PLAINTIFF CASES ONLY)

MAGISTRATE JUDGE
DUBÉ

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
KENNETH J. VIANALE/CHRISTOPHER JONES
MILBERG WEISS BERSHAD HYNES & LERACH LLP
5355 Town Center Road, Suite 900
Boca Raton, FL 33486          561-361-5000

ATTORNEYS (IF KNOWN)
Unknown

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

Dade 1:02cv20758 FAM Dube

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | A PROPERTY RIGHTS | B☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | B☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | B☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | | ☐ 371 Truth in Lending | B☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | A LABOR | B SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA 1395ff | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor Mgmt Relations | ☐ 862 Black Lung 923 | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC DIWW 405(g) | ☐ 893 Environmental Matters |
| A REAL PROPERTY | A CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI 405(g) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | HABEAS CORPUS: | | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | B☐ 530 General | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | A☐ 791 Empl Ret Inc Security Act | A☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions A OR B |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U S CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)
This action is a verified derivative claim brought to recover unauthorized payments made to certain directors and officers of FPL Group. The Court has jurisdiction pursuant to
28 U.S.C. § 1332(a)(1)

LENGTH OF TRIAL
via 5 days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $ exceeds
$75,001

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE Gold
DOCKET NUMBER 02-20170

DATE
3-7-02

SIGNATURE OF ATTORNEY OF RECORD

$150.00 858872
03/11/02

FOR OFFICE USE ONLY